CYNTHIA E. RICHMAN (*pro hac vice*)
  CRichman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5306
Telephone:    202.955.8500
Facsimile:    202.467.0539

DANIEL G. SWANSON, SBN 116556
  DSwanson@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:    213.229-7000
Facsimile:    213.229.7520

JULIAN W. KLEINBRODT, SBN 302085
  JKleinbrodt@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA  94111-3715
Telephone:    415.393.8200
Facsimile:    415.393.8306

*Attorneys for Defendant*
*APPLE INC.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LUISA BAKAY, ELISA JONES, and LETICIA SHAW, individually and on behalf of all others similarly situated, | CASE NO. 3:24-cv-00476-RS |
| Plaintiffs, | **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS** |
| v. | Date:       June 13, 2024 |
| APPLE INC., | Time:       1:30 p.m. |
| Defendant. | Location:   San Francisco Courthouse, Courtroom 3 – 17th Fl. |
| | Judge:      Hon. Richard Seeborg |

**TABLE OF CONTENTS**

**Page**

**INTRODUCTION** ................................................................................................................1

**ARGUMENT** ....................................................................................................................2

I. PLAINTIFFS LACK ANTITRUST AND CONSTITUTIONAL STANDING ..........................2

   A. Plaintiffs do not deny their theory's extreme complexity.........................................2

   B. Plaintiffs fail to identify any injury in the allegedly restrained market. ................................7

   C. Plaintiffs assert no redressable alleged injury as to their claim for injunctive relief. ..............8

II. PLAINTIFFS DO NOT PLEAD A SECTION 1 VIOLATION ...................................9

   A. Plaintiffs fail to plead concerted action. ...............................................................9

   B. Plaintiffs fail to plead a *per se* claim. ...............................................................10

   C. Plaintiffs fail to plead a rule of reason claim. ...................................................12

III. BINDING PRECEDENT BARS THE CONSPIRACY TO MONOPOLIZE CLAIM ............14

IV. PLAINTIFFS' CLAIMS ARE TIME-BARRED....................................................15

**CONCLUSION**................................................................................................................15

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*,
190 F.3d 1051 (9th Cir. 1999) ........................................................................ 3, 7

*Am. Needle, Inc. v. Nat'l Football League*,
560 U.S. 183 (2010) ........................................................................................ 9, 10

*In re Am. Express Anti-Steering Litig.*,
19 F.4th 127 (2d Cir. 2021) ............................................................................. 5

*Apple Inc. v. Pepper*,
139 S. Ct. 1514 (2019) .................................................................................... 7, 8

*Assoc. of Wash. Public Hosp. Dist. v. Philip Morris Inc.*,
241 F.3d 696 (9th Cir. 2001) ........................................................................... 5

*Associated General Contractors v. Carpenters*,
459 U.S. 519 (1983) ........................................................................................ 3

*Aurora Enters. v. NBC*,
688 F.2d 689 (9th Cir. 1982) ........................................................................... 2, 15

*Barton & Pittinos, Inc. v. SmithKline Beecham Corp.*,
118 F.3d 178 (3d Cir. 1997) ............................................................................ 3

*Brantley v. NBC Universal, Inc.*,
675 F.3d 1192 (9th Cir. 2012) ......................................................................... 13, 14

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
509 U.S. 209 (1993) ........................................................................................ 8, 12

*Bus. Elec. Corp. v. Sharp Elec. Corp.*,
485 U.S. 717 (1988) ........................................................................................ 2, 10

*Cargill, Inc. v. Monfort of Col., Inc.*,
479 U.S. 104 (1986) ........................................................................................ 3

*City of Oakland v. Oakland Raiders*,
20 F.4th 441 (9th Cir. 2021) ........................................................................... 3, 5, 7

*Danjaq LLC v. Sony Corp.*,
263 F.3d 942 (9th Cir. 2001) ........................................................................... 15

*Delaware Valley Surgical Supply Inc. v. Johnson & Johnson*,
523 F.3d 1116 (9th Cir. 2008) ......................................................................... 5, 6

*Dimidowich v. Bell & Howell*,
803 F.2d 1473 (9th Cir. 1986) ......................................................................... 11, 12

Gibson, Dunn &
Crutcher LLP

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
CASE NO. 3:24-CV-00476-RS

*Eagle v. Star-Kist Foods, Inc.*,
    812 F.2d 538 (9th Cir. 1987) ................................................................................... 1, 3, 5, 6

*Epic Games, Inc. v. Apple Inc.*,
    67 F.4th 946 (9th Cir. 2023) ............................................................................ 9, 11, 13, 14

*Feitelson v. Google Inc.*,
    80 F. Supp. 3d 1019 (N.D. Cal. 2015) ......................................................................... 7, 13

*F.T.C. v. Ind. Fed'n of Dentists*,
    476 U.S. 447 (1986) ........................................................................................................ 13

*F.T.C. v. Qualcomm Inc.*,
    969 F.3d 974 (9th Cir. 2020) ...................................................................................... 7, 13

*Garrison v. Oracle Corp.*,
    159 F. Supp. 3d 1044 (N.D. Cal. 2016) ........................................................................ 15

*Cal. ex rel. Harris v. Safeway, Inc.*,
    651 F.3d 1118 (9th Cir. 2011) ....................................................................................... 11

*Harrison Aire, Inc. v. Aerostar Intern., Inc.*,
    423 F.3d 374 (3d Cir. 2005) ......................................................................................... 12

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977) ......................................................................................................... 7

*Int'l Longshore & Warehouse Union v. ICTSI Oregon, Inc.*,
    863 F.3d 1178 (9th Cir. 2017) ....................................................................................... 14

*Jones v. Micron Tech. Inc.*,
    400 F. Supp. 3d 897 (N.D. Cal. 2019) ............................................................................ 4

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ....................................................................................... 15

*Kloth v. Microsoft Corp.*,
    444 F.3d 312 (4th Cir. 2006) .................................................................................. 3, 4, 5, 7

*Krehl v. Baskin-Robbins Ice Cream Co.*,
    664 F.2d 1348 (9th Cir. 1982) ....................................................................................... 11

*Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*,
    551 U.S. 887 (2007) ....................................................................................................... 10

*Levine v. Vilsack*,
    587 F.3d 986 (9th Cir. 2009) ........................................................................................... 9

*Lorenzo v. Qualcomm Inc.*,
    603 F. Supp. 2d 1291 (S.D. Cal. 2009) ............................................................... 4, 7, 12

*Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*,
    140 F.3d 1228 (9th Cir. 1998) ......................................................................................... 2

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
CASE NO. 3:24-CV-00476-RS

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)........................................................................................................... 8

*Metro Indus., Inc. v. Sammi Corp.*,
   82 F.3d 839 (9th Cir. 1996) ............................................................................................ 11

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
   465 U.S. 752 (1984)................................................................................................... 9, 10

*In re Multidistrict Vehicle Air Pollution*,
   591 F.2d 68 (9th Cir. 1979) .......................................................................................... 2, 15

*In re Musical Instruments & Equip. Antitrust Litig.*,
   798 F.3d 1186 (9th Cir. 2015) ....................................................................................... 10

*New York v. Meta Platforms, Inc.*,
   66 F.4th 288 (D.C. Cir. 2023)....................................................................................... 15

*Ohio v. Am. Express Co.*,
   585 U.S. 529 (2018)...........................................................................................8, 12, 14

*Oliver v. SD-3C LLC*,
   751 F.3d 1081 (9th Cir. 2014) ....................................................................................... 15

*Optronic Tech., Inc. v. Ningbo Sunny Elec. Co., Ltd.*,
   20 F.4th 466 (9th Cir. 2021) ......................................................................................... 14

*Oxbow Carbon & Mons. v. Union Pac. R.R. Co.*,
   926 F. Supp. 2d 36 (D.D.C. 2013) ............................................................................... 14

*Novell, Inc. v. Microsoft Corp.*,
   505 F.3d 302 (4th Cir. 2007) ........................................................................................... 6

*Novell, Inc. v. Microsoft Corp.*,
   731 F.3d 1064 (10th Cir. 2013) ....................................................................................... 6

*Samsung Elecs. Co., Ltd. v. Panasonic Corp.*,
   747 F.3d 1199 (9th Cir. 2014) ....................................................................................... 15

*Pierre v. Apple Inc.*,
   No. 3:23-cv-05981, Dkt. 49 (N.D. Cal. Mar. 26, 2024) ......................................... 4, 10

*Procaps S.A. v. Patheon, Inc.*,
   845 F.3d 1072 (11th Cir. 2016) ................................................................................... 1, 9

*Reveal Chat Holdco, LLC v. Facebook, Inc.*,
   471 F. Supp. 3d 981 (N.D. Cal. 2020)......................................................................... 15

*Sambreel Holdings LLC v. Facebook, Inc.*,
   906 F. Supp. 2d 1070 (S.D. Cal. 2012) ....................................................................... 11

*SaurikIT, LLC v. Apple Inc.*,
   2023 WL 8946200 (9th Cir. Dec. 28, 2023).................................................................. 15

Gibson, Dunn &
Crutcher LLP

v

*Schwab Short-Term Funds v. Lloyds Banking Group PLC*,
 22 F.4th 103 (2d Cir. 2021)...................................................................................................4

*Smith v. eBay Corp.*,
 2012 WL 27718 (N.D. Cal. Jan. 5, 2012)..............................................................................15

*United States v. Microsoft Corp.*,
 253 F.3d 34 (D.C. Cir. 2001)..................................................................................................6

**Statutes**

15 U.S.C. § 2............................................................................................................................14

**Other Authorities**

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust
 Principles and Their Application* (4th and 5th eds. 2013–2023) ....................................7, 11

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
CASE NO. 3:24-CV-00476-RS

# INTRODUCTION

Most telling is what Plaintiffs do not say in their opposition. The threshold problem with this case is that it turns on a convoluted theory of harm in which iPhone purchasers claim Apple's rules requiring third-party web browsers to use its open-source browser engine, WebKit, somehow led to inflated iPhone prices. Plaintiffs do not dispute that this theory entails at least *eight* intermediate steps to connect the challenged conduct to the alleged harm. Nor do they even mention Ninth Circuit precedent holding that only "immediate victims" of the "alleged antitrust violation" have standing to sue. *Eagle v. Star-Kist Foods, Inc.*, 812 F.2d 538, 541 (9th Cir. 1987). By instead attacking strawmen, Plaintiffs fail to offer any argument that—even if accepted—could establish standing. Nor have Plaintiffs shown they state a viable or timely Section 1 or Section 2 claim. The Court should dismiss the Complaint with prejudice.

First, Plaintiffs lack standing under both the antitrust laws and Article III. Plaintiffs argue that they suffered antitrust injury, are "direct purchasers" of iPhones," and plausibly pled some (but not all) links in their causal chain. Opp. 19–20, 22. This misses the point. Even if Plaintiffs were correct on each score, they still lack standing because their case turns on an indirect, speculative, and attenuated theory of causation connecting Apple's alleged restraint on iOS browser engines to alleged supracompetitive pricing on smartphones and smartphone operating systems. That alone is dispositive. That Plaintiffs *also* do not allege antitrust injury is an additional basis to dismiss the Complaint. All of Plaintiffs' claims should be dismissed.

Second, Plaintiffs fail to state a Section 1 claim. They argue that the mere incorporation of Apple's App Review Guidelines into a contract satisfies the concerted action inquiry, that the agreement as to Google is *per se* unlawful because the companies compete in certain areas, and that they have adequately pled anticompetitive effects. Opp. 5–17. Each of these arguments fails. To start, "the simple existence of a contract," "standing alone," does not satisfy Section 1's concerted action requirement. *Procaps S.A. v. Patheon, Inc.*, 845 F.3d 1072, 1081 (11th Cir. 2016). Regardless, competition between Google and Apple in some fields does not make the alleged *restraint* anything but an intrabrand restraint "between firms at different levels of distribution" in the alleged mobile browser market—and therefore subject to the rule of reason. *Bus. Elec. Corp. v. Sharp Elec. Corp.*,

485 U.S. 717, 730 (1988).  And because Plaintiffs do not and cannot plausibly allege an anticompetitive harm—and certainly not one in the supposedly restrained smartphone and smartphone operating system markets—any rule of reason theory fails too.

Third, Plaintiffs' Section 2 conspiracy to monopolize claim also should be dismissed.  Every court to reach this issue, including the Ninth Circuit, has concluded that Plaintiffs' joint monopoly theory is not viable.  Plaintiffs concede they have no supporting authority.  To the extent Plaintiffs now pivot and argue Google conspired to vest Apple with a monopoly, this implausible claim is refuted by Plaintiffs' own allegations.

Finally, all of Plaintiffs' claims are untimely.  Plaintiffs try to invoke the continuing violation exception, citing cases involving price-fixing conspiracies.  Opp. 24.  But this is not a price-fixing case; it is a challenge to a guideline implemented long ago.  Where, as here, supposedly supracompetitive prices are the "unabated inertial consequences of [this] pre-limitations action[]," *In re Multidistrict Vehicle Air Pollution*, 591 F.2d 68, 72 (9th Cir. 1979), later purchases do not inflict a "new and accumulating" injury, *Aurora Enters. v. NBC*, 688 F.2d 689, 694 (9th Cir. 1982).  There is thus no "continuing violation" exception here—meaning that the statute of limitations independently bars all of Plaintiffs' claims.

## ARGUMENT

## I.     PLAINTIFFS LACK ANTITRUST AND CONSTITUTIONAL STANDING

As Apple explained in its Motion, the threshold defect in Plaintiffs' case is that their wending theory is too attenuated to confer antitrust or Article III standing.  Mot. 7–15.  In opposition, Plaintiffs argue that they plausibly pled some of the causal links necessary to their theory of harm and have alleged antitrust injury.  Opp. 19–24.  These arguments miss the mark: Even if Plaintiffs are correct (and they are not), their theory remains too indirect, they assert an antitrust injury *in the wrong markets*, and there is no alleged injury redressable through injunctive relief.

### A.     Plaintiffs do not deny their theory's extreme complexity.

As Apple explained in its motion (Mot. 7), Plaintiffs fail to allege an "injury which bears a causal connection to the alleged antitrust violation" (required under Article III), *Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1232 (9th Cir. 1998), or that they are "a proper party

to bring a private antitrust action" (required under the Clayton Act), *Associated General Contractors v. Carpenters*, 459 U.S. 519, 535 n.31 (1983). Plaintiffs rest their case on two inapposite rejoinders: that they suffered antitrust injury (Opp. 18–23) and that they plausibly alleged some links in their causal chain (Opp. 19–20). Even if Plaintiffs were right—and they are not—they *still* lack standing.

**1.** Plaintiffs first argue that they have standing because they allege anticompetitive conduct, and, they say, everything that flows from that conduct is "of the type the antitrust laws were intended to prevent." Opp. 18; *see also id.* at 19. That improperly conflates antitrust *injury*—whether the plaintiff suffers harm "of the type the antitrust laws were intended to prevent," *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1055 (9th Cir. 1999)—with antitrust (or constitutional) *standing*. *See Kloth v. Microsoft Corp.*, 444 F.3d 312, 324 (4th Cir. 2006). To be sure, Plaintiffs do not allege antitrust injury. *See infra* § I.B. But it would make no difference if they did: "A showing of antitrust injury is necessary, but not always sufficient, to establish standing." *Cargill, Inc. v. Monfort of Col., Inc.*, 479 U.S. 104, 110 n.5 (1986); *see also AGC*, 459 U.S. at 535 n.31 (explaining that "injury in fact" does not mean "the plaintiff is a proper party to bring a private antitrust action"). Whether or not they suffered an antitrust injury, Plaintiffs lack standing. *See City of Oakland v. Oakland Raiders*, 20 F.4th 441, 456 (9th Cir. 2021) (dismissing antitrust claims for lack of standing despite adequately alleging antitrust injury); *Barton & Pittinos, Inc. v. SmithKline Beecham Corp.*, 118 F.3d 178, 182 (3d Cir. 1997) (similar). For example, Plaintiffs are not the "immediate victims" of the "alleged antitrust violation." *Eagle*, 812 F.2d at 541; *see also* Mot. 8–10. Courts routinely dismiss complaints under such circumstances. *See, e.g.*, *Eagle*, 812 F.2d at 541; *Kloth*, 444 F.3d at 324.

**2.** Plaintiffs lack Article III and antitrust standing because the causal chain connecting the challenged conduct with the alleged harm is not immediate or proximate but rather far too attenuated and speculative. Compl. ¶¶ 23, 107, 461, 473–80; Mot. 5, 8–9, 10–12. Plaintiffs do not dispute that they allege a harm at least eight steps removed from the alleged restraint or that this theory turns on the assumed actions of many independent third parties. *See* Mot. 8–9. Nor do they dispute that courts—including the Ninth Circuit—have repeatedly rejected claims with far less attenuation than this one. *See, e.g.*, *Eagle*, 812 F.2d at 541 (dismissing an antitrust claim on standing grounds when the injury was only two steps removed from the alleged conduct); *Schwab Short-Term Funds v. Lloyds Banking*

1    *Group PLC*, 22 F.4th 103, 116–17 (2d Cir. 2021) (plaintiffs lacked antitrust standing because they

2    failed to allege proximate cause); *Kloth*, 444 F.3d at 324 (similar); *Jones v. Micron Tech. Inc.*, 400 F.

3    Supp. 3d 897, 912–13 (N.D. Cal. 2019) (similar); *Lorenzo v. Qualcomm Inc.*, 603 F. Supp. 2d 1291,

4    1302–03 (S.D. Cal. 2009) (similar). Indeed, Judge Chhabria recently dismissed another antitrust case

5    against Apple alleging a similarly attenuated and speculative claim. *See Pierre v. Apple Inc.*, No. 23-

6    cv-05981, Dkt. 49 (N.D. Cal. Mar. 26, 2024) (finding iPhone purchasers challenging a Guideline for

7    peer-to-peer payment applications had "not adequately alleged antitrust standing (and probably not

8    even Article III standing) given the speculative nature of the connection between the alleged

9    anticompetitive conduct and the plaintiffs' injury" of allegedly inflated transaction fees).

10       Rather than confront the indirectness of their theory, Plaintiffs caricature the problem by listing

11   eleven steps to brushing one's teeth. Opp. 20. But this serves only to highlight the difference between

12   a "manufacture[d] . . . series of attenuated steps," *id.*, and a causal chain that is actually attenuated.

13   Lifting a tube of toothpaste, unscrewing the cap, squeezing the tube, and brushing one's teeth are

14   predictable acts performed by one person in rapid sequence that do not hinge on the uncertain decisions

15   of independent parties. This case is the opposite. Among other steps, Plaintiffs allege that but for the

16   WebKit requirement, developers would write web apps that can be saved to the user's home screen

17   (what Plaintiffs and some commentators denominate "PWAs") for browser engines instead of native,

18   operating system-based apps; consumers would then switch *en masse* to use of alleged "PWAs" instead

19   of native apps; through mechanisms unknown and despite high alleged barriers to entry, unknown

20   market entrants would develop new smartphone operating systems; other unknown market entrants

21   then would develop new smartphones competing with Apple; and that as a result, Apple would respond

22   to this competition by lowering the price of its iPhone models. Compl. ¶¶ 104–07, 174–75, 204–06,

23   211, 307, 404–05, 470–71; *see also* Mot. 8–9 (outlining all eight of the economically significant steps

24   in Plaintiffs' theory). Tellingly, Plaintiffs do not argue that any of the eight steps are wrong or

25   unnecessary under their theory, nor do they dispute that they rely on just-so assumptions about how

26   many independent third parties would react to hypothetical changes in complex technology markets.

27       Unable to compact their theory of harm into fewer steps, Plaintiffs argue that *some* of these

28   steps are plausibly pled. *See* Opp. 20–21. Setting aside this tacit admission that most of the causal

steps are *not* plausibly pled, *see City of Oakland*, 20 F.4th at 459–60, this too misses the point.  Plaintiffs do not dispute that they must plead *proximate* causation, Opp. at 20, yet their argument fails to acknowledge that their alleged injury is not "direct and immediate."  *Eagle*, 812 F.2d at 541 (holding plaintiffs lacked antitrust standing because their claims turned on an indirect theory of causation, not because that theory was implausible).  Remarkably, Plaintiffs do not even mention *Eagle* in their opposition.  But other courts have also found no standing where plaintiffs pressed attenuated claims— regardless of whether the alleged chain of causation was plausible.  *See, e.g.*, *Assoc. of Wash. Public Hosp. Dist. v. Philip Morris Inc.,* 241 F.3d 696, 701 (9th Cir. 2001); *Delaware Valley Surgical Supply Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1124 (9th Cir. 2008); *In re Am. Express Anti-Steering Litig.*, 19 F.4th 127, 144 (2d Cir. 2021); *Kloth*, 444 F.3d at 324.  An eight-link chain of causation is far too attenuated to confer antitrust standing even if each link in the chain were plausible.

In any event, none of the steps Plaintiffs discuss are in fact plausibly pled.  Plaintiffs contend that Apple "ignores the alleged facts" concerning the first, third, and sixth steps of their theory.  Opp. 20.  Not so:

➢ Plaintiffs argue that what they call "PWAs" exist and run on Blink, which "would immediately run on iPhones if [users] were permitted to install Google's Chrome with its Blink web engine."  Opp. 20.  But this argument assumes Google would launch a Blink-powered version of Chrome for iOS but for Apple's WebKit requirement—an assumption that runs directly contrary to Plaintiffs' conspiratorial theory of Apple's WebKit requirement, which they describe as a mutually-beneficial "market division between Apple and Google."  Opp. 9.

➢ Plaintiffs' allegation that "PWAs" are "native-like," Opp. 21, does not mean users would switch to them.  iOS users would have to download a browser on their iPhones capable of running PWAs (whatever they are), and then access and use the hypothetical PWAs in place of the current native apps they use now—an assumption without factual support in the Complaint.

➢ That Microsoft and Mozilla allegedly tried to enter the alleged smartphone and smartphone operating system markets years ago, Opp. 15, does not make it plausible that they will do so again in the future.  The Complaint does not say that it was the absence of supposed "PWAs" that led to Microsoft and Mozilla's failures in the marketplace, nor do Plaintiffs allege that these

or other entities could or would seek to enter.  Compl. ¶¶ 300–13.  Plaintiffs do not even try to argue otherwise; they instead only undercut their argument by elsewhere underscoring how "powerful" they believe the alleged barriers to entry are.  Opp. 2.[1]

The Complaint thus fails to plausibly allege the three causal steps Plaintiffs argue in their opposition, let alone all eight implied by their theory of harm.[2]

**3.**  While Plaintiffs do not even attempt to address the binding precedent foreclosing their claims, the two out-of-circuit cases on which they rely only hurt their cause further.  Plaintiffs first cite *Novell, Inc. v. Microsoft Corp.*, a competitor lawsuit in which Microsoft "withheld from Novell key technical information necessary to make well-functioning [. . .] applications."  505 F.3d 302, 309–10 (4th Cir. 2007).  The court found that Novell had standing because the alleged anticompetitive conduct was "directly aimed at Novell."  *Id.* at 309.  Here, the alleged restraint is not aimed at Plaintiffs in any way: Plaintiffs are iPhone buyers, not iOS developers, and they are neither party to nor bound by Guideline 2.5.6.  And as then-Judge Gorsuch said in later reviewing the same case, private plaintiffs cannot pursue an antitrust case without properly linking "the defendant's alleged anticompetitive conduct, on the one hand, and its injuries and the consumer's, on the other."  *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1080 (10th Cir. 2013).  So too here.

Even worse is Plaintiffs' argument that their "allegations resemble the theory at issue in the seminal antitrust case against Microsoft."  Opp. 15.  Not so, but regardless, Plaintiffs' attempt to liken their case to *United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001), only confirms that dismissal is appropriate here because, "[u]nlike the United States government, . . . a private antitrust plaintiff must show standing to sue."  P. Areeda & H. Hovenkamp, *Antitrust Law: An Analysis of*

---

[1] Indeed, if there were an impact on Microsoft and Mozilla, this would only underscore that Plaintiffs are *less* directly affected by the conduct.  *See Eagle*, 812 F.3d at 542 (existence of vessel owners who were more directly harmed by canneries alleged price fixing supported crewmembers lack of standing); *Delaware Valley*, 523 F.3d at 1124 ("There are clearly other motivated plaintiffs" more directly harmed who will be "efficient enforcers of antitrust laws.").

[2] Plaintiffs also say in passing that the risk of duplicative recoveries or complex apportionment is irrelevant because different classes of plaintiffs can be harmed by an antitrust violation.  Opp. 22–23.  Again, this fails to address the actual problem at play here.  The issue is not whether Apple has "downstream consumers and upstream suppliers," *id.* at 23, but that risks of duplicative recovery and complex apportionment are inherent to their claim because of the numerous third parties that could pursue a damages theory similar to Plaintiffs (meritless as it may be).  *See* Mot. 14–15.

Gibson, Dunn &
Crutcher LLP

1    *Antitrust Principles and Their Application* ¶ 335a (4th and 5th eds. 2013–23); *City of Oakland*, 20 F.4th

2    at 455 n.10 (*Microsoft* court "did not address the [standing] question presented here").  The Clayton

3    Act's standing requirements *did* apply when consumers sued Microsoft in the government's wake

4    under the exact same theory, and the Fourth Circuit found they *lacked* antitrust standing.  *Kloth*, 444

5    F.3d at 321.

6            **B.**     **Plaintiffs fail to identify any injury in the allegedly restrained market.**

7        Although Plaintiffs argue at length about antitrust injury, Opp. 19–20, they largely ignore the

8    main flaw with their claims—a failure to allege injury "in the market where competition is allegedly

9    being restrained."  *F.T.C. v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020); *see also* Mot. 15.

10   Plaintiffs do not dispute that they allege harm in the alleged smartphone and/or smartphone operating

11   system markets, Compl. ¶ 19, but that the alleged restraint operates in the "U.S. mobile browser

12   market." *Id.* ¶ 189; *see also Am. Ad Mgmt., Inc.,* 190 F.3d at 1057 (explaining this mismatch is fatal);

13   *Microsoft*, 253 F.3d at 69 (rejecting Section 2 attempt claim premised on undefined market).  Plaintiffs

14   respond that it suffices that they are "direct purchasers" of iPhones from Apple, Opp. 22, but that speaks

15   to a different issue.  Apple has not argued Plaintiffs' claims should be dismissed under *Illinois Brick*'s

16   direct-purchaser rule, which bars suit by "indirect" purchasers who buy the relevant product through a

17   middleman.  *See Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).  Even if Plaintiffs are direct iPhone

18   purchasers under *Illinois Brick*, their claim of harm in a *smartphone* market does not plead antitrust

19   injury suffered in the allegedly restrained *mobile browser* market.

20       Plaintiffs ignore that Judge Freeman dismissed a similar complaint for this precise reason in

21   *Feitelson v. Google Inc.*, 80 F. Supp. 3d 1019, 1023–28 (N.D. Cal. 2015).  There, the plaintiffs alleged

22   supracompetitive prices and reduced consumer choice for smartphones based on an alleged restraint

23   between Google and cell phone OEMs regarding pre-loaded apps and default search engines.  *Id.*  Judge

24   Freeman found no antitrust injury because the alleged injury was not in "the market in which the alleged

25   anticompetitive conduct occurred."  *Id.* at 1027.  Even though Apple's Motion (at 9) pointed this out—

26   as well as the similar reasoning in *Lorenzo*, 603 F. Supp. 2d at 1296—Plaintiffs do not even mention

27   these cases, much less suggest they are unpersuasive.

28       Plaintiffs instead misread *Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019), arguing that the

Supreme Court there allowed consumer lawsuits to proceed based on alleged injuries suffered up the distribution chain. Opp. 22. But the "sole question" in *Pepper* was whether consumer-purchasers of apps from the Apple App Store "were 'direct purchasers' of apps from Apple" under *Illinois Brick*. *Id.* at 1520. The Court held that they were because plaintiffs there alleged they bought *apps* directly from Apple, not from developers up the distribution chain, and as such directly paid overcharges in an allegedly restrained *app market*. *Id.* at 1519. Nothing in that case held, much less suggested, that purchasers of iPhones could claim overcharges on smartphones based on an alleged restraint up the distribution chain in a distinct market. *See id.*

In any event, Plaintiffs fail to plausibly allege antitrust injury in any market. To plausibly allege supracompetitive prices, a plaintiff must plead that prices were inflated above a competitive level because "output was restricted." *Ohio v. Am. Express Co.*, 585 U.S. 529, 549 (2018) ("*Amex*"); *accord Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 237 (1993). Plaintiffs allege no such restriction to support their "overcharge injury" here. Opp. 19; *see also* Mot. 21–22. They refer to "an output restriction on smartphone OS features, namely web engines." Opp. 13. But that does not mean Apple allegedly reduced output of the products Plaintiffs allegedly purchased—smartphones and smartphone operating systems. And while Plaintiffs say that they implied "an output constraint on cross-platform smartphones," *id.*, that supposition rests on the implausible and speculative chain of inferences discussed above; Plaintiffs never allege that Apple reduced its own output of smartphones or smartphone operating systems. Thus, neither of Plaintiffs' "output restrictions" make their overcharge injury plausible. *See* Mot. 21–22.

**C.    Plaintiffs assert no redressable alleged injury as to their claim for injunctive relief.**

Finally, Plaintiffs argue that they have standing to pursue injunctive relief because an injunction would lead Google to deploy Blink on iOS. Opp. 24. But even if the Court assumes that Google would deploy Blink in response to a putative injunction, Plaintiffs still lack standing because "it must be likely, as opposed to merely speculative, that the[ir] injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up). Browser developers, like Google, are only one of many third parties upon whom Plaintiffs' injunctive remedy depends. *See* Mot. 10–13. Accordingly, even if the Complaint sufficiently pled that non-WebKit browser apps would be launched

on iOS, Plaintiffs' asserted relief still depends on the speculative behavior of app developers (who must switch from making operating system-native apps to making PWAs), app users (who must switch from using native apps to PWAs), one or more unspecified operating system developers (who must develop a new operating system), and one or more unspecified smartphone OEMs (who must develop new smartphones to compete with iPhones). *Id.* Again, Plaintiffs *do not dispute* any of those steps. Because each of these links turns on the speculative conduct of third parties with no plausible likelihood that they will behave as Plaintiffs say, Plaintiffs fail to plead redressability. *See, e.g.*, *Levine v. Vilsack*, 587 F.3d 986, 997 (9th Cir. 2009) (no standing for injunctive relief because "any pleading directed at the likely actions of third parties . . . would almost necessarily be conclusory and speculative").

## II.    PLAINTIFFS DO NOT PLEAD A SECTION 1 VIOLATION

Plaintiffs also fail to plead a Section 1 claim under *per se* or rule-of-reason theories. First, Plaintiffs fail to show their alleged claims arise from concerted action. Second, they fail to identify allegations to deviate from the default rule of reason. Third, their rule-of-reason theory fails for lack of plausible anticompetitive effects in the alleged relevant markets.

### A.    Plaintiffs fail to plead concerted action.

In their opposition, Plaintiffs confirm that the only challenged restraint is Apple's App Review Guideline 2.5.6. Opp. 13; *see also* Compl. ¶ 143. But it is not enough to point to the existence of a Guideline—or the fact that developers sign a contract agreeing to abide by that Guideline—to allege concerted action. *See Procaps*, 845 F.3d at 1081. Plaintiffs have not addressed how this case differs crucially from *Epic Games, Inc. v. Apple Inc.*, 67 F.4th 946 (9th Cir. 2023). *See* Mot. at 18 n.5. Whether firms are engaged in concerted action for purposes of Section 1 turns on a "functional analysis" into whether the challenged conduct is an "agreement . . . [that] joins together separate decisionmakers" in a manner that eliminates an "independent center[] of decisionmaking." *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 190, 192 (2010) (internal quotation marks omitted). Under this inquiry, unilateral conditions of dealing do not constitute concerted action under Section 1. *See, e.g.*, *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 761 (1984).

As Apple explained, Apple's Guideline 2.5.6 presents a unilateral requirement that any browser apps developed on iOS must use WebKit for a browser engine. *See* Mot. 17–18. When developers

unilaterally opt to follow this requirement, they accede to Apple's unilateral conditions of dealing. *See Monsanto*, 465 U.S. 761. This is additive: Because Apple allegedly "makes it virtually impossible to load apps onto an iPhone outside of the App Store," Compl. ¶ 111, Guideline 2.5.6 allows developers to make *more* browser apps available for consumers on iOS without foreswearing some other competitive path that was otherwise open to them. That is, it does not deprive the market of an "independent center[] of decisionmaking." *Am. Needle*, 560 U.S. at 190, 199. Plaintiffs seek to dismiss this as "factual assertion" that "contradicts the facts as pleaded," Opp. 7–8, but they do not identify the supposedly contradictory allegations.

Plaintiffs instead misrepresent Apple's statements in other litigation. True, Apple explained in *Pierre* that developers agree in an enforceable contract to abide by the App Review Guidelines. *See Pierre*, No. 23-cv-05981, Tr. of Oral Arg. at 33:4–7 (Mar. 21, 2024). But Apple also maintained there that the Guidelines are not concerted action. *Id.* 31:21–32:4, 34:9–11. Judge Chhabria agreed: He dismissed the complaint in *Pierre* in part because "it is not clear how companies agreeing to a guideline outlining the Apple Store requirements for apps . . . constitutes an unlawful agreement under Section 1 of the Sherman Act." *Pierre*, No. 23-cv-05981, Dkt. 49 at 1 (Mar. 26, 2024). So too here.

## B. Plaintiffs fail to plead a *per se* claim.

Even if Plaintiffs allege concerted action, they do not state a *per se* claim because Guideline 2.5.6 is a vertical, intrabrand restraint that, to the extent it has any horizontal dimension, resembles dual-distribution. *See Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*, 551 U.S. 887, 888 (2007); *Bus. Elecs. Corp.*, 485 U.S. at 720; *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1198 (9th Cir. 2015).

**1.** Plaintiffs first try to argue that this is a horizontal case because Apple and Google compete in the smartphone and smartphone operating system markets, and Guideline 2.5.6 is "directly relevant to the horizontal relationship between Apple and Google." Opp. 5–6. But the question is whether the *restraint* is horizontal. It's not. Guideline 2.5.6 does not restrain horizontal competitors from selling smartphones or operating systems. *See, e.g.*, Compl. ¶¶ 141–144. It is a vertical, intrabrand restraint: In following the Guideline, Google acts as developer—vertically positioned to Apple as the platform operator—and agrees to limits only for the apps it develops for Apple's platform. *See* Mot. 19–20. For

this reason, the Ninth Circuit found that Apple's in-app payment Guidelines were vertical, "intrabrand limitations" in *Epic Games*, 67 F.4th at 989. Indeed, Plaintiffs do not even try to distinguish the other decisions finding similar relationships to be vertical. *See, e.g.*, *Frame-Wilson v. Amazon. com, Inc.*, 591 F. Supp. 3d 975, 986 (W.D. Wash. 2022) (dismissing *per se* claim where plaintiffs "challenge[d] the vertical agreement between third-party sellers and their *host* platform" (emphasis in original)); *Sambreel Holdings LLC v. Facebook, Inc.*, 906 F. Supp. 2d 1070, 1077 (S.D. Cal. 2012) (same). Accordingly, the *per se* rule cannot apply.

     2. Even if Plaintiffs are right that Guideline 2.5.6 has some horizontal dimension, it at most implicates "a 'hybrid' arrangement composed of both a dual distributorship and a horizontal relationship." *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1480–81 (9th Cir. 1986). That is because, according to the Complaint, Apple makes and distributes WebKit to developers, Compl. ¶ 140, and also makes and distributes Safari to users—supplying developers with access to the browser engine to make their own browsers while also offering its own, competing browser app to iPhone users. *Id.* ¶ 141. This is at least an equally "complex" and "hybrid" arrangement to the one described in *Dimidowich*, 803 F.2d at 1480–81, and other dual-distribution cases—most of which Plaintiffs do not even attempt to distinguish. *See* Opp. 11–12. Because "[b]y and large, restraints imposed by dual distributing manufacturers serve legitimate purposes without harming market competition," Areeda & Hovenkamp, ¶ 1605c, they too cannot be condemned *per se*. *See Krehl v. Baskin-Robbins Ice Cream Co.*, 664 F.2d 1348, 1355–56 (9th Cir. 1982); *Metro Indus., Inc. v. Sammi Corp.*, 82 F.3d 839, 844 (9th Cir. 1996); *Cal. ex rel. Harris v. Safeway, Inc.*, 651 F.3d 1118, 1137 (9th Cir. 2011).

     Nevertheless, Plaintiffs argue that "Apple does not distribute its WebKit engine separate from its operating system, and it does not distribute WebKit through Google." Opp. 11. That is wrong, and the Complaint admits as much: By alleging that Guideline 2.5.6 requires Google (and other browser app developers) to use WebKit in its iOS products, the Complaint necessarily asserts that Apple distributes WebKit separately from the operating system that Plaintiffs allege is sold to *consumers* in a "smartphone operating system market." *See* Compl. ¶¶ 142–44, 193. Moreover, this argument is irreconcilable with Plaintiffs' other allegations that Apple does not distribute its iOS operating system separate from the iPhone yet Plaintiffs claim that separate markets are involved there. Compl. ¶ 207.

In any event, semantics cannot disguise the reality that Apple is in a more complex "hybrid" relationship in which it supplies developers with an input for their browser app while also distributing Safari itself. *See Dimidowich*, 803 F.2d at 1480–81; *Brewbaker*, 87 F.4th at 573–83 & n.14. Plaintiffs' argument is thus both wrong and beside the point.

### C.   Plaintiffs fail to plead a rule of reason claim.

To try to sustain a rule of reason claim, Plaintiffs proffer seven purported "harms to competition." Opp. 13–17. None suffice. Several are not even cognizable anticompetitive effects, and the remainder are not plausibly alleged. Plaintiffs' claim therefore fails. *See Amex*, 585 U.S. at 541.

**Supracompetitive Prices (#5).** Merely labeling prices "supracompetitive" does not plausibly plead that they are so. *Harrison Aire, Inc. v. Aerostar Intern., Inc.*, 423 F.3d 374, 380 (3d Cir. 2005). Supracompetitive pricing requires the ability of a firm "to charge a price higher than the competitive price without inducing so rapid and great an expansion of output from competing firms as to make the supracompetitive price untenable." *Id.*; *see also* Mot. 21–22. Accordingly, the Supreme Court has repeatedly held that "[s]upracompetitive pricing entails a restriction in output." *Brooke Grp.*, 509 U.S. at 233; *see also Amex*, 585 U.S. at 547–48. Plaintiffs fail to allege any output restriction in the smartphone and smartphone operating system markets. Compl. ¶¶ 237–398; *see also supra* § I.B.

**Barriers to Entry (#3) & Exclusion of Rivals (#4).** Plaintiffs also assert that Guideline 2.5.6 raises barriers to entry in the smartphone and smartphone operating system markets and, relatedly, excludes potential rivals like Mozilla from entering those markets. Opp. 15–16. Neither is a cognizable anticompetitive effect because neither occurs in the same market as the alleged restraint. *See Qualcomm*, 969 F.3d at 1000–01 (alleged harms not cognizable where "located outside the 'areas of effective competition . . . and had no direct impact on the competition in those markets"). Plaintiffs have not attempted to define the "U.S. mobile browser market" in which Apple allegedly imposed a restraint on browser engines used by developers of iOS browser apps, Compl. ¶¶ 142–43, 189; whatever it is, however, it is not the two alleged markets in which Plaintiffs allege higher barriers to entry and the exclusion of rivals (the smartphone and smartphone operating system markets). Opp. 15–16. Plaintiffs seem to admit as much, conceding that these "effects" redound to their complaint about supracompetitive prices in the alleged smartphone or smartphone operating system markets, Opp.

16—for which Plaintiffs fail to allege a required reduction in output reduction, as discussed above.

**Reduced Consumer Choice (#7).** Plaintiffs also make a passing argument about harm to consumer choice. Opp. 17. But a bare allegation of reduced consumer choice does not plead an anticompetitive harm because this is "fully consistent with a free, competitive market." *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1202 (9th Cir. 2012); *accord Qualcomm*, 969 F.3d at 990. And while Plaintiffs argue they had fewer choices among iOS browser engines, Opp. 17, they do not plausibly "indicate [how] [Apple's] conduct has prevented consumers from freely choosing among [other] products or prevented competitors from innovating" *in the relevant markets*—where consumers continue to have robust choices among Apple and Android devices (and operating systems). Compl. ¶ 179; *see also Feitelson*, 80 F. Supp. 3d at 1029 (rejecting "allegations of hypothetical loss of consumer choice and innovation" as "too conclusory and speculative"); *Epic Games*, 67 F.4th at 989 (holding Apple's *intra*brand restrictions promote *inter*brand competition).

Plaintiffs point to *Federal Trade Commission v. Indiana Federation of Dentists*, but that was a case in which the defendants were independent dentists engaged in a horizontal group boycott to maintain supracompetitive prices for dental services. 476 U.S. 447, 459–63 (1986). Guideline 2.5.6 is an *intrabrand* limit that differentiates Apple's platform from Android—which allegedly does not have an analogous browser-engine requirement. *See Epic*, 67 F.4th at 989. For that reason, the Ninth Circuit rejected a similar appeal in *Epic* to *Federation of Dentists*, finding that "Apple did not agree with other app-transaction platforms (e.g., the Google Play Store) to eliminate *interbrand* competition" and instead "imposed *intrabrand* limitations" that promoted competition. 67 F.4th at 989 (emphasis added). iPhone purchasers remain free to switch between Apple and Android for the browser engines (or any other features) they want. *See Feitelson*, 80 F. Supp. 3d at 1029.

**Other Alleged Anticompetitive Effects (#1, 2, 5, 6).** Plaintiffs' remaining arguments—that Guideline 2.5.6 is a horizontal restriction, that it may facilitate future collusion, that it guards market power, or that it makes no economic or technical sense, Opp. 13–17—all fail for the same reason: None are an anticompetitive effect at all. Guideline 2.5.6 is not a horizontal restraint, *see supra* § II.B, and, in any event, a horizontal restriction is a description of the alleged conduct, not an anticompetitive *effect*. *See Brantley*, 675 F.3d at 1200–01. Similarly, the notion that Guideline 2.5.6 may facilitate

future collusion, Opp. 14–15, is not only unpled but also merely identifies a speculative form of unrealized anticompetitive *conduct*. *See id*. Plaintiffs' passing reference to market power, Opp. 16, likewise fails as it is the presence of cognizable anticompetitive effects that separates unlawful acquisition of market share from legitimate competition. *See Amex*, 585 U.S. at 542. Finally, the suggestion that Guideline 2.5.6 makes "no economic or technical sense," Opp. 17, is at most a preemptive attempt to rebut a procompetitive justification, not a harm to competition itself. *See id*.

\* \* \*

Apple's WebKit requirement promotes a more secure, private user experience. That is good for consumers. *See Epic*, 67 F.4th at 986. Because Plaintiffs fail to identify any anticompetitive effects in their alleged relevant markets, their claims should be dismissed. *See Amex*, 585 U.S. at 541.

## III. BINDING PRECEDENT BARS THE CONSPIRACY TO MONOPOLIZE CLAIM

Section 2 speaks to monopolization by a single firm. 15 U.S.C. § 2. Plaintiffs nevertheless try to defend their "shared monopoly" theory by pointing to a footnote in *International Longshore & Warehouse Union v. ICTSI Oregon, Inc.*, 863 F.3d 1178 (9th Cir. 2017), that, they say, suggests the Ninth Circuit has "not decided the shared-monopoly question" in cases involving concentrated markets. Opp. 17–18. This is no authority at all. There, the Ninth Circuit said it "need not"—and therefore "d[id] not"—decide the question. *Int'l Longshore*, 863 F.3d at 1195 n.14. But four years later, it held that a "joint monopoly" is not cognizable under Section 2. *Optronic Tech., Inc. v. Ningbo Sunny Elec. Co., Ltd.*, 20 F.4th 466, 482 (9th Cir. 2021). And that is the conclusion the "vast majority of other courts" have reached too, *Oxbow Carbon & Mons. v. Union Pac. R.R. Co.*, 926 F. Supp. 2d 36, 45–46 (D.D.C. 2013)—as Apple pointed out and Plaintiffs do not dispute. *See Mot.* 22–23.

To the extent that Plaintiffs now argue "that the companies agreed to vest Apple with monopoly power," Opp. 18, the Complaint contains no factual allegations to support this argument. To the contrary, Plaintiffs allege that Apple and Google share a supposed duopoly nearly 50 times. *See, e.g.*, Compl. ¶¶ 181, 184, 188, 191, 193. And the Complaint even says on several occasions that Apple and Google sought to "preserve the duopoly." *Id.* ¶¶ 188, 197, 199, 229. Nor do Plaintiffs explain how their new theory could be plausible: They elsewhere argue Google would, if it could, launch a Blink-based version of Chrome for iOS—which, if true, means it would *not* join a supposed conspiracy to

grant Apple a monopoly. *See, e.g.*, Opp. 10, 20, 24. This implausible, unalleged theory of conspiracy cannot save Plaintiffs' claim. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047–48 (9th Cir. 2008).

## IV. PLAINTIFFS' CLAIMS ARE TIME-BARRED

There is no dispute that four-year statute of limitations "runs from the commission of the act" by the defendant, *Oliver v. SD-3C LLC*, 751 F.3d 1081, 1086 (9th Cir. 2014), or that the clock started no later than 2015—by which point Google and Mozilla had launched their iOS web browsers. *Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1063 (N.D. Cal. 2016); *see also* RJN Exs. 2 & 3. Plaintiffs instead seek to invoke the continuing violation exception, arguing that each purchase of an allegedly "price-inflated product" constitutes an overt act. Opp. 24. But in cases like this one, the "continued purchase of a defendants' product or service does not constitute a 'new and independent act' that would restart the statute of limitations." *Smith v. eBay Corp.*, 2012 WL 27718, at * (N.D. Cal. Jan. 5, 2012). The cases to which Plaintiffs point are price-fixing conspiracies in which each sale of the price-fixed product is an overt act of the conspiracy itself. *See Oliver*, 751 F.3d at 1086. This is not a price-fixing case. Plaintiffs challenge Apple's decision long ago to require WebKit. Compl. ¶ 140. Supposedly supracompetitive prices are only the "unabated inertial consequences of [this] pre-limitations actions." *Air Pollution*, 591 F.2d at 72. Thus, continual purchasing of iPhones merely an affirmation of Apple's prior conduct and does not inflict a "new and accumulating" injury on Plaintiffs. *Aurora Enters*, 688 F.2d at 694; *see also SaurikIT, LLC v. Apple Inc.*, 2023 WL 8946200, *1 (9th Cir. Dec. 28, 2023) (affirming dismissal as time-barred another case challenging a decade-old decision about what developers could or could not do on the App Store).[3]

## CONCLUSION

The Court should dismiss Plaintiffs' Complaint with prejudice.

---

[3] The "four-year statute of limitations" also is "a guideline for computation of the laches period." *Samsung Elecs. Co., Ltd. v. Panasonic Corp.*, 747 F.3d 1199, 1205 (9th Cir. 2014). Prejudice then is presumed. *See New York v. Meta Platforms, Inc.*, 66 F.4th 288, 300 (D.C. Cir. 2023). And *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 955 (9th Cir. 2001), cited by Plaintiffs, "is a copyright infringement case, and Plaintiffs do not articulate why *Danjaq* should apply in the antitrust context." *Reveal Chat Holdco, LLC v. Facebook, Inc*., 471 F. Supp. 3d 981, 991 (N.D. Cal. 2020). This Court can and should dismiss Plaintiffs' claims for injunctive relief. *See id.*

Gibson, Dunn & Crutcher LLP

DATED: May 20, 2024

GIBSON, DUNN & CRUTCHER LLP
CYNTHIA E. RICHMAN
DANIEL G. SWANSON
JULIAN W. KLEINBRODT


By:  */s/ Cynthia E. Richman*
     Cynthia E. Richman

*Attorneys for Defendant APPLE INC.*

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
CASE NO. 3:24-CV-00476-RS